UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DEMARIUS WALKER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:23-cv-01466-GCS |
| | ) |
| JASON ROBINSON, and | ) |
| GARY LONG, | ) |
| | ) |
| Defendants. | ) |

### MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

Pending before the Court is the Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies filed by Defendant Robinson. (Doc. 30, 31). Plaintiff, by and through his counsel, opposes the motion. (Doc. 34). For the reasons discussed below, the Court **DENIES** the Motion for Summary Judgment. (Doc. 30).

#### PROCEDURAL BACKGROUND

Plaintiff DeMarius Walker was an inmate within the Illinois Department of Corrections ("IDOC") who was incarcerated at Pinckneyville Correctional Center.[1] He was previously incarcerated at Centralia Correctional Center ("Centralia"), where he allegedly suffered serious injuries. (Doc. 18, p. 1-4). On October 14, 2023, Plaintiff filed his Third Amended Complaint against Defendants Jason Robinson and Gary Long pursuant

---

[1] On March 3, 2025, Plaintiff notified the Court of a change in address indicating that he had been released from prison. (Doc. 46).

to 42 U.S.C. § 1983 and § 1988 for alleged deprivations of his Eighth Amendment constitutional rights. *Id.* at ¶ 16.² Plaintiff seeks monetary damages. *Id.*

Defendant Robinson filed the present Motion for Summary Judgment on the Exhaustion of Administrative Remedies along with his Memorandum of Support on May 6, 2024. (Doc. 30, 31).³ Plaintiff timely filed a Response to the Motion for Summary Judgment on June 10, 2024. (Doc. 34).

## FACTUAL BACKGROUND

Plaintiff alleged that he worked in the kitchen at Centralia in 2021. (Doc. 18, ¶ 15). There, he identified a problem with the electrical system involving an obviously broken, bent, and exposed electrical plate cover during the last week of July 2021. *Id.* at ¶¶ 10-11. Plaintiff immediately alerted his supervisor, Defendant Long, to the issue. *Id.* at ¶ 10. In response, Defendant Long stated, "[t]he State is not going to fix it, everything is going to shit." *Id.*

On August 8, 2021, Plaintiff was pushing a metal cart through the kitchen when it struck the metal box with the exposed electrical plate cover. (Doc. 18, ¶ 15). Plaintiff suffered an immediate electrocution to his brain, kidneys, and other systems, leaving him

---

² The Third Amended Complaint combines all the claims and defendants that Plaintiff named in three separate actions he filed in this Court to address the same incident. *See Walker v. Thompson, et al.*, No. 23-cv-01466-SMY (S.D. Ill. filed May 1, 2023) (first case); *Walker v. Thompson, et al.*, No. 23-cv-02430-SMY (S.D. Ill. filed July 13, 2023) (second case); *Walker v. Beers, et al.*, No. 23-cv-02372-SMY (S.D. Ill. filed Aug. 8, 2023) (third case). The first and third cases were consolidated into this action on September 14, 2023, and the second case was administratively closed on July 23, 2023. Plaintiff retained counsel to prepare and file the Third Amended Complaint (Doc. 18), which supersedes and replaces all prior complaints (Doc. 1, 12, and 14).

³ The Motion does not dispute that Plaintiff properly exhausted his claims against Defendant Long. (Doc. 31).

unconscious, disfigured, and permanently disabled. *Id.* at ¶ 16. He now suffers from mobility loss, memory loss, and pain. *Id.* A team of physicians and surgeons treated Plaintiff for his injuries and will continue to treat him in the future. *Id.*

Defendant Robinson attached a portion of Plaintiff's grievance record to his Memorandum of Support containing Plaintiff's grievances covering the period for the above-mentioned allegations. (Doc. 31, Exh. C). Plaintiff provided the Court with a handwritten note attached to one of the grievances as well. (Doc. 34, Exh. 1). Below is a summary of the contents of the grievances and their procedural history.

1.  *Grievance No. E-21-8-109 (Submitted on July 27, 2021)*

On July 27, 2021, Plaintiff submitted Grievance No. E-21-8-109 regarding a work order not being submitted. (Doc. 31, Exh. C, p. 17). Plaintiff alleged that on July 27, 2021, while mopping the kitchen area, he discovered an exposed electrical plate cover on the wall. *Id.* Plaintiff told his co-worker Hawthorn, "they need to fix to this" to which Hawthorn responded, "[g]o tell the Supervisor [to] put in a work order." *Id.* Plaintiff then alerted Supervisor Long to the exposed electrical plate cover issue. *Id.* Supervisor Long observed the exposed electrical plate cover and said, "[t]he state is not going to fix it, everything is going to shit" *Id.* at p. 18.

On December 6, 2021, the Grievance Officer reviewed Plaintiff's grievance. (Doc. 31, Exh. C, p. 16). Grievance Officer Jeffrey Strubhart reported the following:

> Based upon a total review of all available information, this Grievance Officer recommends that the grievance issue be denied. This Grievance Officer walked over to the Employee dining room and walked behind the serving line. This Grievance Officer did not observe any exposed metal

plate. At some time since the date of the grievance, 8-13-21, any exposed metal plates have been corrected.

*Id.* The Chief Administrative Officer ("CAO") concurred, and Plaintiff's grievance was denied. *Id.* On December 31, 2021, Plaintiff timely filed an appeal to the Director of the Administrative Review Board ("ARB"). *Id.* On January 20, 2022, the ARB found that no further review was warranted because Centralia resolved the problem. *Id.* at p. 14.

2.     *Grievance No. E-21-8-110 (Submitted on August 13, 2021)*

On August 13, 2021, Plaintiff submitted Grievance No. E-21-8-110 related to the August 8th incident. (Doc. 31, Exh. C, p. 22). Plaintiff alleged that he saw sparks fly after striking the exposed plate on the wall while pushing a metal cart through the kitchen. *Id.* Plaintiff next remembered waking up in a hospital bed in the early hours of August 10, 2021. *Id.* Plaintiff reported both back and chest pain as well as a lack of feeling in all but his left leg. *Id.*

Plaintiff marked the grievance as an emergency. (Doc. 31, Exh. C, p. 22). As such, it was expedited to the Grievance Officer for review on September 8, 2021. *Id* at p. 20. Grievance Officer Strubhart reported the following:

> Based upon a total review of all available information, this Grievance Officer recommends that the grievance be partially upheld. Walker's medical concerns are being addressed and if he has further medical concerns, he should submit a written request to be seen through Nurse Sick Call. The electrical problem appears to have been caused by the impact of Walker striking the electrical box. This has been repaired and no further complaints have been received.

*Id.* On September 10, 2021, the CAO concurred with the Grievance Officer's disposition.

*Id.* On September 15, 2021, Plaintiff timely filed an appeal to the Director of the ARB. *Id.*

On September 17, 2021, Plaintiff attached a handwritten note to this grievance adding additional detail. (Doc. 34, Exh. 1). Plaintiff noted that Inmate Hawthorn was present in late July when Plaintiff alerted his supervisor, Defendant Long, to the exposed electrical plate cover and on August 8th when Plaintiff suffered his injuries. *Id.* Plaintiff wrote, "Hawthorn also was interviewed by Internal Affairs 'L.T. Robinson' where's hawthorn report?" *Id.* Plaintiff also questioned the location of both the pictures from before the exposed electrical plate cover was fixed and the facility's report regarding his injuries. *Id.* Additionally, Plaintiff noted that his medical concerns were only being half met. *Id.*

The grievance and note were both received by the ARB on September 22, 2021. (Doc. 31, Exh. C, p. 19, 24). The ARB denied Plaintiff's grievance on September 28, 2021, stating that the issue was addressed by Centralia and instructing Plaintiff to request assistance for any future medical concerns that arise. *Id.* at p. 19.

### LEGAL STANDARDS

Summary judgment is proper when the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. PROC. 56(a). The movant bears the burden of establishing the absence of a genuine issue as to any material fact and entitlement to judgment as a matter of law. *See Santaella v. Metropolitan Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). This Court must consider the entire record, drawing reasonable inferences and resolving factual disputes in favor of the non-movant. *See Regensburger v. China Adoption Consultants, Ltd.*, 138 F.3d 1201, 1205 (7th Cir. 1998) (citing

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). In determining the outcome on a motion for summary judgment, the Court's role is to determine whether a genuine issue of material fact exists, not to weigh the evidence or determine the truth of the matter asserted. *See Anderson*, 477 U.S. at 249; *see also National Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008).

However, in *Pavey v. Conley*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. 544 F.3d 739, 740-741 (7th Cir. 2008). Thus, it is up to the Court to evaluate whether a prisoner has exhausted his or her administrative remedies when the affirmative defense of non-exhaustion is raised. If the Court determines that a prisoner did not exhaust his or her administrative remedies, then the Plaintiff is given the opportunity to exhaust should time permit or if the failure to exhaust was innocent. *Id.* at 742.[4] Alternatively, if the Court determines that the failure to exhaust was the prisoner's fault, the case is over. *Id.*

Under the Prison Litigation Reform Act ("PLRA"), which governs lawsuits filed by inmates, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or

---

[4] *Pavey* provides that an "innocent" failure to exhaust includes situations when prison officials prevent prisoners from pursuing exhaustion of their administrative remedies. 544 F.3d at 742. Further, if an inmate submits a grievance and does not receive a response, the inmate's attempts at exhaustion will be deemed thwarted, and the inmate will be allowed to proceed with the lawsuit. *See, e.g., Walker v. Sheahan*, 526 F.3d 973, 979 (7th Cir. 2008) (noting that an inmate is not required to appeal his grievance if he submits the grievance to the proper authorities but never receives a response); *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (indicating that a remedy can be unavailable to a prisoner if the prison does not respond to the grievance or uses misconduct to prevent a prisoner from exhausting his remedies).

other correctional facility *until* such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (emphasis added). This aligns with the PLRA's statutory purpose of "afford[ing] correction officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter v. Nussle*, 534 U.S. 516, 525 (2002); *see also Begolli v. Home Depot U.S.A., Inc.*, 701 F.3d 1158, 1161 (7th Cir. 2012). Additionally, the PLRA affords prison administrations an opportunity to fix the problem, reduce damages, and shed light on the factual disputes that may arise in litigation. *See Pozo v. McCaughtry*, 286 F.3d 1022, 1023-24 (7th Cir. 2002).

When attempting to exhaust administrative remedies, prisoners must follow their prison's administrative rules. *See Pozo*, 286 F.3d at 1023. As an inmate confined within the IDOC, Plaintiff must follow the regulations set forth in the IDOC's Grievance Procedures for Offenders ("IDOC Grievance Procedures") to properly exhaust his claim. *See* 20 Ill. Admin. Code § 504.800, *et seq*. The Seventh Circuit requires strict adherence to a prison's grievance procedures to satisfy the exhaustion requirement under the PLRA. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Accordingly, a prisoner cannot satisfy the exhaustion requirement by filing untimely or otherwise procedurally defective grievances. *See Woodford v. Ngo*, 548 U.S. 81, 83 (U.S. 2006). Nor may a prisoner file a lawsuit while the prisoner is simultaneously proceeding through the required grievance process. *See Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). Consequently, if a prisoner fails to use a prison's grievance process properly, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

To initiate the grievance process, the IDOC Grievance Procedures first require that inmates file a grievance with a Counselor at their correctional institution within 60 days of the discovery of an incident. *See* 20 ILL. ADMIN. CODE § 504.810(a). In the grievance, the prisoner must provide: "factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint."[5] *Id.* Should the prisoner not be satisfied with the Counselor's response, the prisoner can then submit a formal grievance to the prison's Grievance Officer. *Id.* at (a)-(b). The Grievance Officer must review the grievance and provide a written response to the inmate. *See* 20 ILL. ADMIN. CODE § 504.830(a). The Grievance Officer must report his or her findings and recommendations in writing to the Chief Administrative Officer ("CAO") within 60 days of receipt of the grievance, when reasonably feasible under the circumstances. *See* 20 ILL. ADMIN. CODE § 504.830(e). The CAO shall review the findings and recommendations from the Grievance Officer and advise the inmate of his or her decision in writing. *Id.*

If the prisoner is not satisfied with the CAO's decision, the prisoner can then formally appeal to the Director through the ARB within 30 days of the CAO's decision. *See* ILL. ADMIN. CODE § 504.850(a). The IDOC's Offender's Grievance instructs the Offender to "attach a copy of any pertinent document . . . and place in the designated locked receptacle marked 'grievance'" and "[m]ail to Administrative Review Board" if

---

[5]     This does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible. *See* 20 ILL. ADMIN. CODE § 504.810(a).

"issues [are] not resolved by the Chief Administrative Officer." Ill. Dept. of Corr., *Offender's Grievance*, DOC 0046 (rev. 2020). The inmate must also attach copies of the Grievance Officer's report and the CAO's decision to the appeal. *See* ILL. ADMIN. CODE § 504.850(a). The ARB then submits its written recommendation to the Director, who is responsible for issuing the IDOC's final decision within six months. *See* 20 ILL. ADMIN. CODE § 504.850(d)–(e).

A separate procedure exists for emergency grievances. Inmates may file emergency grievances directly to the CAO. *See* 20 ILL. ADMIN. CODE § 504.840(a). The CAO will determine if there is "a substantial risk of imminent personal injury or other serious or irreparable harm" to the inmate that warrants the grievance being handled on an emergency basis. *Id.* If the CAO classifies the grievance as an emergency grievance, the CAO shall "expedite the process of the grievance and respond to the offender indicating what action shall be or has been taken." *See* 20 ILL. ADMIN. CODE § 504.840(b). The inmate will also be informed by the CAO if it is determined that the grievance is nonemergent. *See* 20 ILL. ADMIN. CODE § 504.840(c). In such a case, notification will be made in writing that the inmate should "resubmit the grievance as non-emergent, in accordance with the standard grievance process." *Id.* When an inmate appeals a grievance that has been deemed emergent by the CAO, the ARB "shall expedite the processing of the grievance." 20 ILL. ADMIN. CODE § 504.850(f).

Lastly, there are certain circumstances where a prisoner may exhaust his or her administrative remedies by filing a grievance directly with the ARB. *See* 20 ILL. ADMIN. CODE § 504.870. Those circumstances include grievances addressing: (1) placement in

protective custody; (2) involuntary administration of psychotropic medication; (3) decisions regarding disciplinary proceedings that took place at an institution other than where the inmate currently resides; and (4) other issues, with the exception of personal property issues, that occurred at a previous institution. *Id.* The ARB "shall review and process . . . [such] grievance[s] in accordance with Section 504.850." *Id.*

## DISCUSSION

Defendant Robinson argues that Plaintiff failed to exhaust his administrative remedies as required by the PLRA because neither Grievance No. E-21-8-109 nor Grievance No. E-21-8-110 expressly identifies him nor grieves his conduct. (Doc. 31, p. 6). Defendant further asserts that Plaintiff's handwritten note, which was attached to Grievance No. E-21-8-110, failed to put Centralia or the ARB on notice of Defendant's alleged involvement in the events at issue. *Id.*

The Seventh Circuit considered similar exhaustion disputes in *Maddox v. Love*, 655 F.3d 709 (7th Cir. 2011), and *Olden v. Jackson*, No. 23-1570, 2024 WL 4601042 (7th Cir. Oct. 29, 2024). In *Maddox*, the Seventh Circuit held that an inmate's failure to name or describe the defendants, a prison chaplain and prison wardens, in his grievance concerning denial of religious fellowship did not bar his claim where prison administrators resolved his grievance on the merits and did not reject it for procedural deficiencies. *See* 655 F.3d at 722. The Seventh Circuit explained that the PLRA's exhaustion requirement is designed to provide prison officials an opportunity to address inmate complaints internally, rather than serve as a procedural trap that bars meritorious claims. *Id.* When prison officials review a grievance on the merits rather than rejecting it for procedural defects, the

Seventh Circuit held that the grievance has fulfilled its purpose under the PLRA, such that defendants cannot later argue non-exhaustion. *Id.* Furthermore, the Seventh Circuit reasoned that a grievance need only provide enough information to allow prison officials to investigate the issue, even if a specific defendant is not explicitly named in the original grievance. *Id.*

On the other hand, in *Olden*, the Seventh Circuit upheld summary judgment against an inmate who failed to name or sufficiently identify the defendant, a physician who provided telepsychiatry services, in his grievance related to an attack by his cellmate. *Olden*, 2024 WL 4601042 at 2–4. In his grievance, Plaintiff stated that "Telepsyci" had not helped him with a different cell placement prior to the attack. *Id.* at 2. The Seventh Circuit found that the word "Telepsyci" alone was not enough to sufficiently identify the defendant where four other psychiatrists provided services at the prison and three worked on any given day. *Id.* at 3-4. The Seventh Circuit also distinguished the facts from those in *Maddox*, emphasizing that *Maddox* applied where the prison still had sufficient notice of the claim and addressed the grievance substantively. *Id.* at 4.

Plaintiff's case aligns more closely with *Maddox* than *Olden*. First, like in *Maddox*, Plaintiff's grievances were reviewed on the merits at every level of administrative review, and no procedural deficiencies were cited as a reason for denial. (Doc. 31, Exh. B, p. 13). This fact alone is sufficient to rebut Defendant Robinson's argument that Plaintiff failed to exhaust. *See, e.g.*, *Maddox*, 655 F.3d at 722 (explaining that "[w]here prison officials address an inmate's grievance on the merits without rejecting it on procedural grounds, the grievance has served its function of alerting the state and inviting corrective action,

and defendants cannot rely on the failure to exhaust defense.") (citing *Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004); *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004)).

Regardless, Plaintiff's grievances "serve[d their] function of alerting the state and inviting corrective action[.]" *Maddox*, 655 F.3d at 722. Plaintiff's omission of Defendant Robinson in his actual grievances was, as in *Maddox*, "a mere technical defect that had no effect on the process and didn't limit the usefulness of the exhaustion requirement." *Id.* at 722. Plaintiff's attached handwritten note, which was included in the ARB's review, stated that Internal Affairs "Lt. Robinson" had interviewed another inmate, Hawthorn, about the exposed electrical plate cover and requested additional information related to Defendant Robinson's report. (Doc. 34, Exh. 1). The PLRA does not require inmates to name each and every defendant in a grievance, provided that the underlying issue remains the same. *See, e.g., Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013) (holding that prisoners "need not file multiple, successive grievances raising the same issue" if the objectionable condition is ongoing). As stated above, Plaintiff's grievances and handwritten note were all related to the electrical plate cover. Therefore, the fact that Plaintiff included Defendant Robinson by name and explained his actions in the handwritten note were sufficient to provide notice of his involvement in the aggrieved conduct.

Plaintiff's identification of Defendant Robinson in his handwritten note also sets his case apart from *Olden*, where the plaintiff's grievance failed to include any information that would allow prison officials to identify the defendant in question. *See Olden v. Jackson*, No. 23-1570, 2024 WL 4601042 at 2-4 (7th Cir. Oct. 29, 2024). As stated

above, Plaintiff's handwritten note identified Defendant Robinson by name and indicated that he interviewed another inmate, Hawthorn, about the electrical plate cover. Therefore, unlike *Olden*, Plaintiff provided sufficient detail in his grievances to invite corrective action. *Id.* at 4.

Considering the above, the Court finds that Plaintiff exhausted his administrative remedies. The grievances were timely filed, properly reviewed, and sufficiently detailed to alert prison officials to the nature of Plaintiff's complaint, including Defendant Robinson's involvement. Plaintiff's grievances were determined on the merits and not rejected for procedural defects. Accordingly, Defendant cannot now claim failure to exhaust as a defense.

## CONCLUSION

For the above stated reasons, the Court **DENIES** the Motion for Summary Judgment as to Exhaustion of Administrative Remedies. (Doc. 30).

**IT IS SO ORDERED.**

**DATED:  March 26, 2025.**

Digitally signed by Judge Sison
Date: 2025.03.26
12:30:43 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**